# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

KHALILAH OMAR,

    Plaintiff,

v.                                            Case No. 8:24-cv-2427-CEH-SPF

HILLSBOROUGH COUNTY PUBLIC
SCHOOL DISTRICT, KELLI RUSSO,
and BRIAN SPIRO,

    Defendants.
_____

## **ORDER**

    This matter comes before the Court on Defendants Hillsborough County Public School District[1], Kelli Russo, and Brian Spiro's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 31). In this action, Plaintiff alleges claims under 42 U.S.C. § 1983 and state tort law. Upon review and consideration, and being fully advised in the premises, the Court finds that the motion to dismiss is due to be granted. Plaintiff will be given an opportunity to amend the complaint.

    **I.    BACKGROUND**[2]

---

[1] The correct name for Hillsborough County Public School District is "The School Board of Hillsborough County", as that is the proper statutory entity for purposes of litigation.

[2] Unless otherwise stated, the following statement of facts is derived from the Second Amended Complaint (Doc. 15), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

Decedent Kamilyah Omar ("Omar") was a twelfth-grade student at Riverview High School. Doc. 15 ¶ 14. Omar died on October 28, 2022. *Id.* ¶ 1. Plaintiff Khalilah Omar is the Personal Representative of the Estate of Kamilyah Omar. *Id.* ¶ 2.

Defendant Hillsborough County Public School District oversees Riverview High School. *Id.* ¶ 3. Defendant Keli Russo was a teacher at Riverview. *Id.* ¶ 4. Defendant Brian Spiro was a principal at Riverview. *Id.* ¶ 5.

Omar suffered from cerebral palsy and, because of that condition, was at an extreme risk of choking and death if not properly supervised while eating. *Id.* ¶ 16. Omar's Individualized Education Plan (IEP), dated April 22, 2022, notes that she "may need reminders to slow down when eating and to take smaller bites." *Id.* ¶ 17.

On October 26, 2022, Omar ate lunch at Riverview without supervision, contrary to her IEP. *Id.* ¶ 18. Riverview nurse Brandy Freebourn was not in the lunchroom at the time Omar was eating. *Id.* ¶ 20. Omar started choking on a meatball during lunch and experienced seizure-like activity. *Id.* ¶¶ 21, 24. Omar became unresponsive after eating the meatball. *Id.* ¶¶ 22, 24. Omar was then taken to a hospital, where the meatball was removed from her airway. *Id.* ¶¶ 29, 31. Omar was pronounced dead two days later. *Id.* ¶ 31. Omar's cause of death was choking on bolus of food. *Id.* ¶ 32.

On October 21, 2024, Plaintiff Khalilah Omar filed this action under 42 U.S.C. § 1983 and under state tort law. Doc. 1. On October 23, 2024, this Court dismissed, *sua sponte*, the initial complaint because it was a shotgun pleading, and Plaintiff timely

amended. Docs. 6, 7. Plaintiff then filed a Second Amended Complaint with Defendants' consent. Docs. 14, 15. The Second Amended Complaint asserts fourteen counts. Plaintiff alleges federal claims in Counts I-VI and state claims in Counts VII-XIV.[3]

Defendants move to dismiss all counts for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Doc. 31.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*.

---

[3] Counts III, IX, and XII, which were asserted against Brandy Freebourn, were dismissed by stipulation pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). Docs. 50, 51. Freebourn is no longer a defendant in this action.

## III.   DISCUSSION

### a.   Section 1983

In Counts I, II, IV, V, and VI, Plaintiff asserts claims under 42 U.S.C. § 1983. Doc. 15 ¶¶ 33-66, 83-113. Under Counts, I, II, and IV, Plaintiff alleges Defendants violated Omar's substantive due process rights because they exercised their authority in a manner that created a danger to her and acted with a degree of culpability that shocks the conscience. *Id.* ¶¶ 33-66, 83-98. Counts I, II, and IV are claims asserted against Defendants Hillsborough County School District, and Russo and Spiro, individually, respectively. *Id.* Count V alleges that Spiro is liable as a supervisor for the substantive due process violations of his subordinates. *Id.* ¶¶ 99-105. Count VI alleges that the Hillsborough County School District is liable under the *Monell* doctrine for failure to train its employees. *Id.* ¶¶ 106-13

Section 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Under the Due Process Clause of the Fourteenth Amendment, no state can deprive "any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV, § 1. "[T]he Fourteenth Amendment is not a 'font of tort law' that can be used, through section 1983, to convert state tort claims into federal causes of action." *See Neal ex rel. Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir.2000). "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against

invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).

The § 1983 counts fail to state a claim for the reasons that follow.

### i. Substantive Due Process

Plaintiff alleges that Defendants violated Omar's substantive due process rights under the state-created danger theory by exercising their authority in a manner that created a danger to Omar. Doc. 15 ¶¶ 45-46, 63-64, 95-96. Specifically, Plaintiff asserts that Defendants exacerbated the risks to Omar by failing to provide adequate supervision during a school lunch, even though Omar had a known risk of choking, according to her IEP. *Id.* ¶¶ 36-38, 54-56, 86-88. Plaintiff also alleges that Defendants "acted with a degree of culpability that shocks the conscience." *Id.* ¶¶ 43, 61, 93.

In their motion to dismiss, Defendants argue that Plaintiff has failed to allege a constitutional violation. Doc. 31 at 6-11. First, Defendants argue that the state-created danger doctrine is no longer a viable theory of liability in the Eleventh Circuit. *Id.* at 8-10. Second, Defendants argue that they do not owe a constitutional duty of protection because they are not in a custodial relationship with Omar. *Id.* at 8-9. Last, Defendants argue that Defendants conduct as pled does not meet the shock the conscience standard. *Id.* at 10-11. Each argument will be addressed in turn.

First, Defendants are correct that the state-created danger doctrine is "no longer good law" under the Eleventh Circuit. *See White v. Lemacks*, 183 F.3d 1253, 1257 (11th

Cir. 1999). There cannot be a § 1983 claim absent a constitutional violation. *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987). In limited circumstances the Constitution, under substantive due process, imposes affirmative duties of care on the state. *Doe v. Braddy*, 673 F.3d 1313, 1318 (11th Cir. 2012); *see White*, 183 F.3d at 1257. Prior to *White*, the Eleventh Circuit imposed affirmative duties of care on the state where (1) a special relationship is found to exist between the victim and the government officials, and (2) when the state creates the danger or renders a person more vulnerable to an existing danger. *See Cornelius v. Town of Highland Lake, Ala.*, 880 F.2d 348, 352-54 (11th Cir. 1989). However, in *White*, the Eleventh Court ruled that the "only relationships" that give rise to a governmental duty to protect individuals from harm "under the substantive due process clause are custodial relationships, such as those which arise from the incarceration of prisoners or other forms of involuntary confinement through which the government deprives individuals of their liberty and thus of their ability to take care of themselves." *See White v. Lemacks*, 183 F.3d 1253, 1257 (11th Cir. 1999). On the facts set forth in the Second Amended Complaint, Plaintiff cannot use the state-created danger doctrine to allege that Defendants had an affirmative duty under the Constitution to supervise Omar during school lunch.

Second, Defendants are also correct that "schoolchildren are not in a custodial relationship with the state." *See Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1378 (11th Cir. 2002); *Teets v. Hillsborough Cnty. Sch. Bd.*, No. 8:15-CV-0094, 2016 WL 7115981, at *4 (M.D. Fla. Nov. 7, 2016) ("[T]he law is plainly and uniformly

established that while at school[,] students are not in a custodial relationship with the state."). School attendance is not similar to the type of incarceration required to establish a custodial relationship. *See Wyke v. Polk Cnty. Sch. Bd.*, 129 F.3d 560, 569 (11th Cir. 1997). "Ordinarily there are no custodial relationships in the public-school system, even if officials are aware of potential dangers or have expressed an intent to provide aid on school grounds." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1329 (11th Cir. 2020). Plaintiff alleges that Defendants Hillsborough County Public School District and Brian Spiro required Omar to remain at the school. However, compulsory school attendance, as alleged here, is not enough to support a custodial relationship in the school setting. In the Second Amended Complaint, Plaintiff fails to allege facts to show that Defendants had an affirmative duty under the Constitution to supervise Omar during school lunch.

Last, Defendants argue that their conduct as alleged, does not reach the shock the conscience standard. "[W]here non-custodial relationships are involved, the government can be held liable under the substantive due process clause only where an official's act or omission is arbitrary or conscience shocking[.]" *White v. Lemacks*, 183 F.3d 1253, 1257 (11th Cir. 1999) (citation modified); *see also Brown v. Greer*, 2021 WL 5085352, at *3 (11th Cir. Nov. 2, 2021) ("To succeed on a substantive due process claim based on a theory that school officials engaged in deliberately indifferent conscience shocking behavior, students must allege both that the officials acted with deliberate indifference and that the indifference was arbitrary or conscience shocking." (citation modified)). A showing of negligence, which Plaintiff alleges, *see* Doc. 15, ¶ ¶

40, 58, 90, is insufficient to meet the shock the conscience standard[4] and "even intentional wrongs seldom violate the Due Process Clause." *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003). "Acts intended to injure in some way unjustifiable by any government interest are most likely to rise to the conscience-shocking level. *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003) (citation modified). The Eleventh Circuit has only found conscience shocking conduct in the school setting where a school employee inflicted excessive and intentional corporal punishment. *See Neal ex rel. Neal v. Fulton Cty. Bd. Of Ed.*, 229 F.3d 1069 (11th Cir. 2000) (teacher struck student with metal lock, knocking the student's eye out of its socket); *Kirkland ex rel. Jones v. Greene Cty. Bd. Of Ed.*, 347 F.3d 903 (11th Cir. 2003) (principal struck student with a metal cane in the head, ribs, and back, leaving a large knot on the student's head); *see also Littlejohn v. Sch. Bd. of Leon Cnty., Fla.*, 132 F.4th 1232, 1244 (11th Cir. 2025) ("[S]ince *Neal*, we have repeatedly rejected claims of 'conscience-shocking' conduct in educational settings.").

"[D]eliberate indifference is insufficient to constitute a due-process violation in a non-custodial setting[.]" *Nix v. Franklin County School District*, 311 F.3d 1373, 1377 (11th Cir. 2002). In *Nix*, a high school teacher instructed his students to hold a live wire during a voltage-reading demonstration in his class. *Id.* at 1374. The teacher warned his students that they could die if they touched the exposed part of the live

---

[4] The Court notes that Plaintiff alleges, in a conclusory fashion, in Counts I, II, and IV, that Defendants' conduct was negligent, deliberately indifferent, and shocks the conscience. *See* Doc 15, ¶¶ 40, 42, 43, 58, 60, 61, 90, 92, and 93.

wire. *Id.* The teacher was also aware that students in a class as large as his would inevitably touch the live wires. *Id.* at 1375. The teacher increased the power to the wire to its peak voltage, then turned away to answer a question. *Id.* at 1374. When the teacher turned back, he saw that one student had touched the wire and was gasping for breath. *Id.* The student died as a result and his parents brought a Section 1983 action alleging that the defendant's actions shocked the conscience. *Id.* at 1375. The Eleventh Circuit held that due process liability in school settings "will only allow recovery for intentional conduct under limited circumstances." *Id.* at 1378. Plaintiff has failed to allege facts to state a claim under § 1983 based on conscience shocking behavior of Defendants.

      Count II asserts that Russo failed to ensure that Omar had appropriate supervision required by her IEP and permitted Omar to eat unsupervised. Doc. 15 ¶ 63. Plaintiff alleges that Russo was aware of Omar's risk of choking and that the risk could be a fatal complication of Omar's condition if not adequately supervised. *Id.* ¶ 54. In essence, Plaintiff alleges that Russo failed to supervise a student, knowing that this lack of supervision could result in a student's death.[5] Additionally, Plaintiff does not plead any intentional acts from Russo directed at Omar. Plaintiff fails to plead facts to support that Russo acted in a manner that shocks the conscience. Thus, Count II fails to state a claim upon which relief can be granted.

---

[5] This failure to supervise a student knowing that the lack of supervision could result in a student's death is like the teacher in *Nix*.

9

Counts I and IV allege that Hillsborough County School District and Spiro required Omar to remain at school and employed individuals who did not adequately supervise Omar during lunch. *Id.* ¶¶ 45, 95. Plaintiff does not allege that the Hillsborough County School District or Spiro intended to harm Omar. This type of conduct falls short of the intentional conduct that shocks the conscience such as corporal punishment. Counts I and IV fail to state a claim upon which relief can be granted.

Plaintiff has failed to allege that Defendants engaged in conscience shocking behavior regarding Omar's safety. Plaintiff has made conclusory allegations that Defendants acted with a degree of culpability that shocks the conscience, however her Second Amended Complaint fails to allege conduct supporting such statement. *See id.* ¶¶ 43, 61, 93. Thus, Counts I, II, and IV, do not allege constitutional violations and are dismissed for failure to state a claim upon which relief can be granted.

### ii. Supervisory Liability

Count V alleges that Spiro exercised supervisory authority for the alleged substantive due process violations committed by Russo and others at Riverview. Doc. 15 ¶¶ 99-105. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Woody v. Cronic*, 401 F. App'x 509, 511 (11th Cir. 2010). To be liable, the supervisory official must personally participate in the act or there must be a "causal connection between the actions of [the] supervising official and the alleged constitutional

deprivation." *Id.* "[T]here can be no supervisory liability . . . if there was no underlying constitutional violation." *Paez v. Mulvey*, 915 F.3d 1276, 1291 (11th Cir. 2019).

As discussed *supra*, Plaintiff has failed to adequately allege that a constitutional violation occurred. Plaintiff cites *Greason v. Kemp,* 891 F.2d 829 (11th Cir. 1990) and *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 453 (5th Cir. 1994) to support the proposition that a supervisor who is aware of a known danger but fails to intervene can be held liable. Doc. 41 at 14. However, both cases involved substantive due process violations that a supervisor was aware of. *Greason,* 891 F.2d at 836 (prison inmate committing suicide while in a custodial relationship with defendants); *Taylor Indep. Sch. Dist.,* 15 F.3d 443 at 453 (school official sexually abusing student). Therefore, Count V fails to state a claim upon which relief can be granted.

### iii. *Monell* Claim

Under Count VI, the Second Amended Complaint raises a *Monell* claim and alleges that the Hillsborough County Public School District adopted policies, practices, or customs that inadequately trained school employees to ensure compliance with Omar's IEP, which contributed to the violation of her constitutional rights. Doc. 15 ¶¶ 106-13. In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978), the Supreme Court held that a municipality could be liable for constitutional violations under Section 1983. To succeed on a *Monell* claim, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional

11

right; and (3) that the [municipality's] policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

First, Defendants argue that Plaintiff's *Monell* claim fails to allege a constitutional violation by the Hillsborough County Public School District and therefore, must be dismissed. Doc. 31 at 13. As discussed previously, Plaintiff has failed to adequately allege that a constitutional violation occurred. Therefore, she has failed to allege a *Monell* claim as well.

Second, Defendants challenge the *Monell* element of a custom or policy. They argue that the allegations neither establish an official custom or policy nor the failure to provide adequate training. *Id.* at 11-12, 14-15. Defendants contend that the single incident alleged cannot state a claim for *Monell* liability based on a failure to train. *Id.* at 14.

Plaintiff responds that the Second Amended Complaint properly alleges a systemic failure by the Hillsborough County Public School District to properly train, supervise, and implement policies necessary to protect students with known medical disabilities. Doc. 41 at 16-17. In the alternative, she contends that a single incident can establish *Monell* liability. *Id.* at 17.

"Municipal policy or custom may include a failure to provide adequate training if the deficiency evidences a deliberate indifference to the rights of its inhabitants." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009) (citation modified). For a *Monell* deliberate indifference claim, Plaintiff must allege that Defendants were aware that a widespread pattern of constitutional violations existed

and yet failed to provide adequate training to address that pattern of violations or that the need for training was so obvious that a municipality's failure to train its employees would result in a constitutional violation. *See Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009); *Mingo v. City of Mobile, Ala.*, 592 F. App'x 793, 799 (11th Cir. 2014).

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability against a municipality." *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (citation modified). A plaintiff fails to state a claim under *Monell* where aside from conclusory allegations, she "fails to identify any examples beyond [her] own" of a defendant's unconstitutional conduct. *Gurrera v. Palm Beach Cnty. Sheriff's Off.*, 657 F. App'x 886, 893 (11th Cir. 2016); *see Alexander v. City of Stuart*, No. 21-14156-CIV, 2022 WL 6570496, at *14 (S.D. Fla. July 15, 2022) ("Courts have repeatedly rejected *Monell* claims where the plaintiff fails to allege facts beyond his or her own interactions with the defendants." (collecting cases)), report and recommendation adopted in part, rejected in part, No. 21-14156-CIV, 2022 WL 4395463 (S.D. Fla. Sept. 23, 2022); *Bowen v. Blais*, No. 6:23-CV-1088, 2024 WL 2724222, at *4 (M.D. Fla. May 28, 2024) (dismissing *Monell* claim where the complaint lacked factual allegations concerning other unlawful incidents involving the defendant).

The Second Amended Complaint fails to allege that the Hillsborough County Public School District was aware of a widespread pattern of constitutional violations. Plaintiff alleges that the Hillsborough County Public School District knew that cerebral palsy students are at risk of choking and that those risks could be fatal to

13

Omar's condition. Doc. 15 ¶¶ 107-08. But she does not identify any other instances of cerebral palsy students choking or school employees failing to address students' medical needs. The Second Amended Complaint is limited to describing the single incident involving Omar. These allegations fall short of the widespread pattern of constitutional violations needed to support a *Monell* claim. The Second Amended Complaint also makes the conclusory allegation that Hillsborough County School District "acquiesced in a longstanding custom or practice whereby [its employees] knew of the life-threatening danger posed . . . and deliberately chose not to pursue a different course of action." Doc. 15 ¶ 110. However, a conclusory allegation of a longstanding or widespread pattern cannot plausibly support a claim under *Monell*. *See Gurrera*, 657 F. App'x at 893. The Second Amended Complaint fails to allege any widespread constitutional violations.

Plaintiff cites *City of Canton v. Harris*, 489 U.S. 378, 390 (1989) to support her claim that a single incident can establish *Monell* liability. In *Canton*, the Supreme Court in dictum stated that deliberate indifference could be established where the "need for more or different training is [] obvious, and the inadequacy [] likely to result in the violation of constitutional rights[.]" *Id.* In *Canton*, the Supreme Court provides the example of a city providing firearms to its police officers, which would have the obvious need to train those officers as to the constitutional limits on the use of deadly force. *Id.* In the years since *Canton*, the Eleventh Circuit has refused to allow municipal liability based on a single incident. *See Craig,* 643 F.3d at 1310; *Gurrera,* 657 F. App'x at 893; *see also Vielma v. Gruler*, 808 F. App'x 872, 883 (11th Cir. 2020) ("[N]either the

Supreme Court nor this Court has ever applied the single-incident liability exception."). Therefore, Count VI fails to state a claim upon which relief can be granted.

### b. State Law Claims

Counts VII, VIII, and X assert wrongful death claims against Hillsborough County Public School District, Russo, and Spiro, respectively. Doc. 15 ¶¶ 114-31, 141-49. Counts XI, XII, and XIV allege survival action claims against the same Defendants, respectively. *Id.* ¶¶ 150-65, 174-81.

Defendants argue that Plaintiff cannot assert both a survival action and a wrongful death claim under Florida law. Doc. 31 at 15 n.5. The Court agrees. Under Florida's Survival Statute, "No cause of action dies with the person. All causes of action survive and may be commenced, prosecuted, and defended in the name of the person prescribed by law." FLA. STAT. § 46.021. Under the Florida Wrongful Death Act, "When a personal injury to the decedent results in death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate." FLA. STAT. § 768.20. "Thus, when death is the result of a personal injury, [§ 768.20] essentially substitutes a statutory wrongful death action for the personal injury action that would otherwise survive under section 46.021." *Niemi v. Brown & Williamson Tobacco Corp.*, 862 So. 2d 31, 33 (Fla. 2d DCA 2003). Here, there is no dispute that the injury underlying the survival action claims caused Omar's death. Therefore, the wrongful death claims substitute any claims under the survival action statute. Counts XI, XII, and XIV are due to be dismissed.

15

Next Defendant argues that the wrongful death claims against Russo and Spiro are barred by sovereign immunity. Doc. 31 at 15-18. Plaintiff responds that the allegations rise to the level of bad faith and wanton and willful conduct. Doc. 18-19.

The Florida Wrongful Death Act provides immunity to state employees from personal liability in tort from acts, events, or omissions of action, in the scope of their employment.[6] FLA. STAT. § 768.28(9)(a); *see Eiras v. Fla.*, 239 F. Supp. 3d 1331, 1343 (M.D. Fla. 2017). This "immunity may be pierced only if state agents either act outside the scope of their employment, or act in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." FLA. STAT. § 768.28(9)(a); *see Eiras v. Fla.*, 239 F. Supp. 3d 1331, 1343 (M.D. Fla. 2017). Conduct committed in bad faith has been equated with the actual malice standard. *Parker v. State Bd. of Regents ex rel. Florida State Univ.*, 724 So.2d 163, 167 (Fla. 1st DCA 1998). "[W]anton and willful disregard connotes conduct much more reprehensible and unacceptable than mere intentional conduct." *See Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987) (citation modified).

---

[6] "No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property[.]" FLA. STAT. § 768.28(9)(a).

Here, Plaintiff does not dispute that Russo and Spiro acted within the scope of their employment. Therefore, the complaint must allege conduct that rises to the level of bad faith and wanton and willful misconduct.

Plaintiff fails to allege conduct that rises to the level of bad faith and wanton and willful misconduct. The Second Amended Complaint alleges that Russo and Spiro had knowledge of Omar's risk of choking if not supervised and Omar's death was a direct result of their negligence and conduct. Doc. 15 ¶¶ 126-31, 144-49. These allegations of negligence do not meet the standard of willful and wonton behavior. *See Diaz v. Miami-Dade Cnty.*, 424 F. Supp. 3d 1345, 1361 (S.D. Fla. 2019) ("[M]ere negligence is not enough to satisfy the 'wanton and willful disregard' standard.") *aff'd*, 849 F. App'x 787 (11th Cir. 2021). Plaintiff does not allege even in conclusory fashion that Russo and Spiro acted in bad faith or with a malicious purpose. In fact, Plaintiff uses the term "negligence" in describing their conduct. Doc. 15 ¶¶ 131, 149. Even had Plaintiff made such conclusory allegations, those allegations would be insufficient to establish bad faith and wanton and willful conduct. *See Eiras v. Fla.*, 239 F. Supp. 3d 1331, 1344 (M.D. Fla. 2017) ("[A] threadbare recital that a defendant acted maliciously and in bad faith is conclusory and insufficient." (citation modified)). Plaintiff has not alleged any facts supporting a claim that Russo or Spiro acted in bad faith or in a manner exhibiting wanton and willful behavior. Thus Counts VIII, and X are dismissed for failure to state a claim.

## IV. CONCLUSION

Although Plaintiff has already amended her complaint twice, she has never done so in response to a Court order on the merits. Accordingly, the Court will dismiss the Second Amended Complaint without prejudice and give Plaintiff one final opportunity to state a claim. Plaintiff is cautioned that the failure to cure the deficiencies identified in this Order may result in dismissal of her claims with prejudice upon an appropriate motion by Defendant.

Accordingly, it is **ORDERED**:

1. Defendants Hillsborough County Public School District, Kelli Russo, and Brian Spiro's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 31) is **GRANTED**.

2. The Second Amended Complaint is **DISMISSED**, without prejudice.

3. Plaintiff is granted leave to file a Third Amended Complaint within **FOURTEEN (14) DAYS** from the date of this Order, which cures the deficiencies discussed in this Order, including properly naming The School Board of Hillsborough County. Failure to file an amended complaint within the time provided will result in this action being dismissed, without prejudice, and without further notice.

**DONE AND ORDERED** in Tampa, Florida on September 30, 2025.

Charlene Edwards Honeywell
United States District Judge

Copies to:

Counsel of Record
Unrepresented Parties, if any